505 So.2d 146 (1987)
Lionel J. MADERE
v.
OCHSNER FOUNDATION HOSPITAL, et al.
No. CA-5662.
Court of Appeal of Louisiana, Fourth Circuit.
March 16, 1987.
Charles F. Gay, Jr., Lisa M. Tompkins, Adams and Reese, New Orleans, for appellees.
Nicolas Estiverne, Nicolas Estiverne & Associates Attorneys & Notaries, New Orleans, for Lionel J. Madere.
Before GULOTTA, BARRY and WARD, JJ.
WARD, Judge.
Lionel J. Madere sued Dr. Edward S. Connolly, Ochsner Foundation Hospital and Ochsner Clinic, alleging medical malpractice and lack of informed consent to surgery. At the close of Madere's case at trial, the Judge granted a directed verdict in favor of the defendants on all of Madere's claims. He appeals. We affirm.
To prove his case, Madere presented his own testimony and that of his wife and two physicians, Dr. Edna Doyle, a specialist in physical medicine who referred Madere to Dr. Connolly, and Dr. Ray Lousteau, an ear, nose and throat specialist who treated Madere after his surgery. The testimony of these witnesses shows that in February 1981, Madere was referred to Dr. Connolly, a neurosurgeon, for diagnosis and treatment of increasing pain and discomfort in his right arm and hand. Dr. Connolly's examination confirmed that Madere had a herniated disc in his neck. On March 9, 1981 at Ochsner, Dr. Connolly performed an anterior cervical discectomy and fusion, a surgical procedure by which, through an incision in front of the neck, the disc pressing on the nerve leading to Madere's right arm was removed and replaced with a piece of bone taken from his hip.
Immediately following the surgery, Madere experienced difficulty in speaking and in swallowing. Despite Dr. Connolly's assurances that these symptoms would pass, Madere continued to have problems with his voice. He found it impossible to shout and the pitch of his voice was raised so that it often resembled the voice of a woman.
Madere's symptoms persisted, and six months after the surgery he consulted Dr. Lousteau who diagnosed paralysis of the vocal cords. Dr. Lousteau testified that *147 this condition can be caused by certain inflammatory diseases or by trauma such as a knife or bullet wound. He acknowledged that vocal cord paralysis is a "known complication" of a cervical fusion and testified that, in his opinion, the surgery caused the paralysis. Dr. Lousteau performed a Teflon injection upon Madere in an effort to improve the volume of his voice. Dr. Lousteau testified that Madere's voice had improved, that the results of the Teflon injection were good and that Madere was satisfied. Dr. Doyle testified that prior to seeing Madere at the trial she had not spoken with him since before the surgery, and in her conversation with him on the morning of trial she noticed nothing unusual about his voice. She stated that his voice before the surgery sounded "much as it sounds now," adding that she recognized his voice.
Madere and his wife testified that the alleged abnormality had caused him to be very self-conscious about speaking, causing him to withdraw from communication with this family and others. Additionally, Madere testified that his condition adversely affected the performance of his job as a warehouse supervisor, both because of his self-consciousness and because he simply could not speak loudly enough to make himself heard in the large, noisy warehouse.
Madere's suit against Dr. Connolly and Ochsner may be summarized as alleging that his consent to the surgical procedure was not a valid informed consent because he was not informed of the risk of laryngeal nerve injury nor of any alternatives to the surgery; that the defendants were negligent in the performance of the surgery; and that Ochsner was negligent in failing to provide adequate consent forms and in failing to adequately supervise Dr. Connolly.
In his appeal from the directed verdict on all these claims, Madere assigns as error the Trial Court's finding that the evidence did not overcome the statutory presumption of the validity of the consent form. He contends as to the malpractice issues that the evidence supports application of the doctrine of res ipsa loquitur, precluding a directed verdict. Finally, Madere assigns as error the Trial Judge's refusal to permit him to call a neurosurgeon to testify on his behalf. Madere asserts that, had the neurosurgeon been allowed to testify, he would have presented evidence further precluding a directed verdict.
We first consider Madere's third argument that he was wrongly denied the right to present the neurosurgeon's testimony. There is nothing in the record to support this argument. The record contains a subpoena and executed return for the day of trial directed to the neurosurgeon in question. The plaintiff's witness list does not, however, include the name of the neurosurgeon, and the transcript of the proceedings contains nothing to indicate that Madere's attorney attempted to call the neurosurgeon. Nor does the record contain a proffer of proof. On this record, we cannot say that Madere was denied the right to call the neurosurgeon, nor can we speculate about what the neurosurgeon's testimony might have been.
We next turn to the informed consent and malpractice issues upon which Madere contends the Trial Court erred in granting the directed verdict. The standard to be applied in determining whether to grant a directed verdict is that set forth in Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir. 1969) and adopted by our state courts. Gordon v. National Union Fire Insurance Co., 411 So.2d 1094 (La.App. 4th Cir.), writs denied 415 So.2d 943, 946 (La.1982).
[T]he Court should consider all of the evidencenot just that evidence which supports the non-mover's casebut in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different *148 conclusions, the motions should be denied, and the case submitted to the jury.
411 F.2d at 374.
In reviewing the directed verdict granted in favor of the defendants in this case, we examine the evidence supporting lack of informed consent and malpractice under this standard to determine whether either issue should have been submitted to the jury for its determination.

INFORMED CONSENT
When written consent to medical treatment is given by a patient as provided by Louisiana's Uniform Consent Law, no evidence is admissible to modify or limit the consent except that showing inducement by misrepresentation. La.R.S. 40:1299.40. Although not placed in evidence during trial, the Ochsner consent form executed by Lionel Madere was filed into the record by the defendants in support of a motion in limine seeking to exclude, under the rule cited directly above, evidence regarding lack of informed consent. It appears from the record that the Trial Judge did not rule upon the motion in limine and that some evidence, other than that of inducement by misrepresentation, was admitted on the issue of lack of informed consent. Most notably, Madere testified that prior to the surgery Dr. Connolly did not mention the risk of paralysis of any kind and that, had he known of that risk, he would not have signed the form.
We find that the consent form which Madere signed meets the requirements of the Uniform Consent Law and that the evidence presented on the issue of lack of informed consent does not amount to proof of inducement by misrepresentation. The evidence, therefore, was inadmissible and may not be considered in opposition to the motion for a directed verdict. There being no admissible evidence to contradict the terms of the consent signed by Madere, which listed loss of function of an organ as a known risk of the surgery, the Trial Judge correctly directed the verdict on all issues regarding informed consent.

RES IPSA LOQUITUR
In a medical malpractice action based upon negligence, the plaintiff ordinarily has the burden of proving the negligence by showing the applicable standard of knowledge or skill or degree of care and that the defendant failed to meet the standard, causing injuries that would not otherwise have occurred. La.R.S. 9:2794(A). This proof is usually made by the testimony of experts in the defendant's field. In the instant case, Madere did not show either the standard of care or a breach of the standard of care. Nonetheless, there is an exception to the requirement that the plaintiff prove negligence in this manner, and that exception applies in cases where the court finds that the doctrine of res ipsa loquitur is applicable. R.S. 9:2794(C). In such a case, application of the doctrine shifts the burden to the defendant to present evidence to show he was not negligent.
Hence, it would have been error to direct a verdict for the defendants if res ipsa loquitur applies because the defendants would have had the burden of proving that they were not negligent. See, e.g., Muse v. New Orleans Public Service, Inc., 449 So.2d 164 (La.App. 4th Cir.), writ denied 450 So.2d 967 (La.1984), in which this Court reversed a directed verdict because the showing made by the plaintiff's case had shifted the burden of proof to the defendant.
Res ipsa is applicable in cases where defendant has actual control of the agency, instrumentality or conditions which caused plaintiff's injuries; the evidence as to the true cause of plaintiff's loss is more readily accessible to defendant than plaintiff; and the accident is of a kind that does not occur in the absence of negligence and/or the circumstances attending the accident create an inference of negligence on the part of defendant.
Morgan v. Willis-Knighton Medical Center, 456 So.2d 650, 655 (La.App. 2nd Cir. 1984).
Before res ipsa applies, Madere must have shown that even in the absence of any testimony of an expert that negligence was *149 the cause of the paralysis of his vocal cords, the circumstantial evidence presented a res ipsa situationthe negligence of the defendants was the most plausible explanation of injury. McCann v. Baton Rouge General Hospital, 276 So.2d 259 (La.1973). We do not believe the evidence presented by Madere made this showing.
Madere's evidence completely fails to show that temporary paralysis of the vocal cords, such as he suffered, does not occur in the absence of negligence, nor does that evidence allow an inference of negligence on the part of the defendants. Dr. Lousteau testified that vocal cord paralysis is a known complication of an anterior cervical discectomy and fusion. We cannot interpret this testimony to imply negligence. To the contrary, a "known complication" is an untoward result which is so common as to be acknowledged by the medical community as a foreseeable consequence. Certainly, a result which occurs only when there is negligence cannot be described as a "known complication."
From Dr. Lousteau's testimony we conclude that the discectomy and fusion necessarily entailed a certain amount of trauma to the surrounding tissue, as does any orthopedic surgery. Some bleeding and inflammation is therefore to be expected, and Dr. Lousteau testified that temporary inflammation can cause paralysis of one or both of the vocal cords. It follows that since inflammation may persist for several months after the trauma of surgery, so may the vocal cords remain paralyzed for up to one year, as Dr. Lousteau testified. Although this undesired, but quite common, complication occurred in this case, the occurrence does not warrant an inference that the defendants were negligent. Res ipsa loquitur does not apply; the burden did not shift to the defendants to prove they were not negligent; and the directed verdict was proper.
For the reasons stated above, we affirm the Trial Court's granting of a directed verdict in favor of Dr. Connolly and Ochsner Foundation Hospital and Ochsner Clinic. All costs to be paid by Lionel Madere.
AFFIRMED.