521 So.2d 534 (1988)
Viola K. HONDROULIS,
v.
John SCHUHMACHER, M.D., et al.
No. CA-7650.
Court of Appeal of Louisiana, Fourth Circuit.
February 10, 1988.
Writ Granted April 4, 1988.
Edward J. Rice, Jr., Lisa D. Newman, New Orleans, for appellees, John Schuhmacher, M.D. and Hartford Fire Ins. Co.
Trevor G. Bryan, Jefferson, Bryan, Gray & Jupiter, New Orleans, for appellant, Viola Hondroulis.
Before GARRISON, BARRY, CIACCIO, LOBRANO and WARD, JJ.
WARD, Judge.
Viola Hondroulis sued Dr. John Schumacher and his insurer, the Hartford Fire Insurance Company, alleging medical malpractice and lack of informed consent to surgery. Dr. Schuhmacher and Hartford were granted a summary judgment dismissing both causes of action. Ms. Hondroulis now appeals only the dismissal of the informed consent claim. We affirm.
Dr. Schuhmacher treated Ms. Hondroulis in 1981 for pain in her lower back. Following a myelogram, the decision was made to *535 perform a lumbar laminectomy. Prior to the surgery, Ms. Hondroulis signed a consent form which contains the following statement:
I understand and acknowledge that the following known risks are associated with this procedure including anesthesia: death; brain damage; disfiguring scars; paralysis; the loss of or loss of function of body organs; and the loss or loss of function of any arm or leg. (Emphasis supplied.)
Ms. Hondroulis does not deny signing the form nor does she allege that she was induced to sign the form by misrepresentation.
Following the laminectomy, Ms. Hondroulis developed numbness in her left leg and loss of bladder control. She filed this suit alleging that Dr. Schuhmacher did not obtain her informed consent because he failed to disclose the specific complications she suffered as risks associated with a laminectomy, although those complications are known risks. The issue presented on appeal is whether the signed consent obtained by Dr. Schuhmacher is sufficient to constitute informed consent under La.R.S. 40:1299.40(A), which provides:
A. Notwithstanding any other law to the contrary, written consent to medical treatment means a consent in writing to any medical or surgical procedure or course of procedures which (a) sets forth in general terms the nature and purpose of the procedure or procedures, together with the known risks, if any, of death, brain damage, quadriplegia, paraplegia, the loss or loss of function or any organ or limb, of disfiguring scars associated with such procedure or procedures, (b) acknowledges that such disclosure of information has been made and that all questions asked about the procedure or procedures have been answered in a satisfactory manner, and (c) is signed by the patient for whom the procedure is to be performed, or if the patient for any reason lacks capacity to consent by a person who has legal authority to consent on behalf of such patient in such circumstances. Such consent shall be presumed to be valid and effective, in the absence of proof that execution of the consent was induced by misrepresentation of material facts. (Emphasis supplied.)
Ms. Hondroulis contends that the language of the statute requires naming the particular organ or limb whose function is threatened. In part, she relies on dicta in LaCaze v. Collier, 434 So.2d 1039 (La. 1983), in which the Court considered the sufficiency of an oral informed consent. While LaCaze holds that a patient's consent to treatment must be measured by the standards contained in La.R.S. 40:1299.40, it does not go as far as Ms. Hondroulis suggests. Rather, LaCaze is silent on the specific issue now before us.
Nonetheless, several recent Fourth Circuit cases imply or specifically hold that a consent form, virtually identical to the one signed by Ms. Hondroulis, satisfies the consent statute. Most notably, in Madere v. Ochsner Foundation Hospital, 505 So.2d 146 (La.App. 4th Cir.1987), this Court found that the consent form signed by the plaintiff met the requirements of La.R.S. 40:1299.40(A) although the form did not list any particular organs which were at risk but merely tracked the statutory language. Similarly, in Leiva v. Nance, 506 So.2d 131 (La.App. 4th Cir.), writ denied 512 So.2d 1176 (La.1987), the plaintiff's claim regarding lack of informed consent was found to have no basis. In Leiva, the plaintiff, who suffered, among other things, the loss of his spleen as a consequence of a gastric partition operation, had also signed a consent form much like the one signed by Ms. Hondroulis. The rule that compliance with the statutory wording is sufficient to constitute informed consent was also suggested in Leonard v. New Orleans East Orthopedic Clinic, 485 So.2d 1008 (La.App. 4th Cir.1986).
In the present case a majority of the panel favored reversal of the Trial Court judgment which held that the form was sufficient as a matter of law. Nonetheless, because the majority was bound by Madere and Leiva, the issue was submitted to the entire court for a determination of whether these cases should be overruled. After en banc consideration of the issue, this Court *536 decided to adhere to the holding that a written consent which tracks the language of R.S. 40:1299.40(A) constitutes valid informed consent. The judges of this panel who disagree with this holding have prepared a separate opinion.
The decision reached by the Court en banc was influenced by several factors. Not the least among these factors was that the requirement of specific disclosure of all organs that are known to be at risk during a surgical procedure would do violence to the legislative intent to provide a clear statutory test for informed consent. If we place this requirement on health care providers, whatever certainty was created by La.R.S. 40:1299.40 would be destroyed, forcing doctors and hospitals to compile long lists of every possible body organ which could be affected by any given medical procedure. Consequently, it is foreseeable that the requirement to disclose only known risks would become meaningless as health care providers, to safeguard against the omission of an organ, the loss of function of which might be classified in later litigation as a "known" risk, would have patients sign a consent form which lists virtually all body organs. Faced with this list, which would resemble a book on anatomy, a patient's consent would not be any more informed than if a form which tracks the statutory language was read to or by the patient before consent was obtained.
Further adding to the problem is the fact that medicine is not an exact, mechanical science. Under anesthesia, conceivably all organs are at risk. In some surgical procedures, doctors may not be able to predict all the organs which might be affected until the procedure is well under way and the peculiarities of the patient's condition are apparent.
Balancing the interests of patients' right to be informed with the need for some certainty to insulate health care providers from frivolous suits allows no perfect solution. Nonetheless, in the absence of obvious legislative intent or controlling caselaw to the contrary, we hold that the use of the statutory language "loss or loss of function of any organ or limb" fulfills the requirements for informed consent under La.R.S. 40:1299.40(A). This language, coupled with the patient's right to ask questions concerning his treatment and to have them answered to his satisfaction before signing a consent form, is sufficient to indicate informed consent to medical treatment.
Furthermore, because no allegations of fraud or misrepresentations were made by Ms. Hondroulis, under La.R.S. 40:1299.40(B) no other evidence would be admissible to modify the authorization set forth in the written consent. Dr. Schuhmacher and the Hartford Fire Insurance Company are therefore entitled to summary judgment as a matter of law and the judgment is affirmed. All costs to be paid by Viola Hondroulis.
AFFIRMED.
LOBRANO, J., concurs.
CIACCO and BARRY, JJ., concur with reasons assigned by LOBRANO, J.
LOBRANO, Judge, concurring.
I reluctantly concur in the majority opinion simply because this Court, en banc, refused to overturn its prior holdings in Madere v. Ochsner Foundation Hospital, 505 So.2d 146 (La.App. 4th Cir.1987), and Leiva v. Nance, 506 So.2d 131 (La.App. 4th Cir.1987), writ denied 512 So.2d 1176 (La. 1987).[1] However, I express the following reasons why this matter should be reversed.
Plaintiff does not deny she signed the consent form nor does she assert any inducement by misrepresentation. She argues that the form she signed is merely a recitation of the statute's "magic words" and that it is really not a disclosure of the known risks of the surgical procedure. Thus she asserts the consent given was not informed.
Defendant argues that he fully complied with the statutory requisites, and that "Louisiana law does not require the specification *537 of the particular organ to which a risk of surgery applies."
Both parties cite their own interpretation of LaCaze v. Collier, 434 So.2d 1039 (La. 1983) in support of their position.
The pertinent portion of the consent form is contained in paragraph 5, and provides:
"I understand and acknowledge that the following known risks are associated with this procedure including anesthesia; death; brain damage; disfiguring scars; paralysis; the loss of or loss of function of body organs; and the loss or loss of function of any arm or leg."
In LaCaze v. Collier, supra, the Court was faced with the sufficiency of an oral informed consent. In that case, the plaintiff underwent a hysterectomy. Subsequent to the surgery she developed a vesico-vaginal fistula which caused her inability to control the bladder functions. The court made several conclusions. First, it held that the provisions of La.R.S. 40:1299.40 did not preclude a patient's oral informed consent. Second, it held that "[a] patient's consent to medical treatment must be measured by the standards contained in Subsection A and Subsection C of the statute." Id. at 1046. And third, since the plaintiff's condition was a known risk of the surgery, and since the loss of bladder function constituted loss of function of an organ, one of the statutory requisites, there was no valid consent. The court ultimately ruled in defendant's favor because plaintiff failed to prove that the lack of informed consent was the cause of her subsequent condition.
Unfortunately the LaCaze case did not decide whether the defendant merely had to advise that there was a risk of loss of function of an organ, or whether he had to advise, more specifically, that there was a risk of loss of the bladder function. The court found that defendant did neither. However, as previously noted, the Court did state that the consent must be measured by the standards contained in the statute. The question then becomes just what information is required to meet those standards. A careful review of the wording of the statute, the reasons for its enactment, and the necessity for informed consent convince me that a mere repeat of its "magic words" to the patient is insufficient.
In both Subsection A and C, the act requires that the explanation to the patient "shall include the matters set forth in Paragraph (a) [R.S. 40:1299.40(A)(a) ]." That is, the patient should be informed of the known risks, if any, of death, brain damage, quadriplegia, paraplegia, the loss or loss of function of any organ or limb, and of disfiguring scars associated with the procedure. As the court in LaCaze noted, the development of the doctrine of informed consent has not been a simple progression of cases, but is derived from many sources. However, it is generally accepted that the doctrine is rooted in the principle that every person has the right to determine what shall be done with his own body. Pizzalotto, M.D. Ltd. v. Wilson, 437 So.2d 859 (La.1983) citing Justice Cardozo in Schloendorff v. Society of New York Hospitals, 211 N.Y. 125, 105 N.E. 92 (1914). I agree with Justice Dennis' definition of consent expressed in his dissent in LaCaze. He stated:
"True consent to what happens to oneself is the informed exercise of a choice, and that entails an opportunity to evaluate knowledgeably the options available and the risks attendant upon each." LaCaze v. Collier, dissenting opinion, 437 So.2d 869, at 869."
Although it has been suggested that the act was passed at the instigation of physicians who wished to secure the protection of a statute, which if followed, would assure that a valid consent had been obtained,[2] I cannot perceive that the legislature intended that all a physician has to do is merely copy the phraseology of the statute. The suggestion by defendant that, with respect to all surgical procedures, a physician who warns his patient "you may lose the function of any organ or limb" satisfies his obligation to advise of a known risk is unrealistic. Although LaCaze held that the statute supersedes the jurisprudential rules, compliance with the statute is *538 still a matter of interpretation by the courts. A reasonable interpretation is that it requires information of known risks in the specific categories set out. That is, if there is a known risk of injury to a particular organ or limb associated with a particular surgical procedure, the patient should know about it.
Normally, the patient is not knowledgeable in medical procedures. He cannot be expected to understand the precise "known risk" of his surgery by merely telling him that he may lose the function of an organ, without, at least, specifying what organ the risk pertains to. Uninformed consent is tantamount to no consent. A patient's choice presupposes an opportunity to evaluate the options and known risks.
I would therefore hold that if it be proved that incontinence is a known risk of plaintiff's surgical procedure, it was not disclosed by the statement "loss of function of body organs." To hold otherwise leads to the absurd result that a physician merely copy the language of the statute for every surgical procedure. We note that the exact same form was signed by plaintiff for the myelogram performed shortly prior to her back surgery. Presumably, the known risks will vary with each surgical procedure, and thus the information furnished should vary.
CIACCIO, Judge, concurring.
I concur for the reasons assigned by Judge Lobrano.
NOTES
[1] The court deadlocked at 6 to 6, thus there was no majority favoring reversal.
[2] See Justice Blanche's concurring opinion in LaCaze, supra.