531 So.2d 450 (1988)
Viola K. HONDROULIS
v.
John SCHUHMACHER, M.D.
No. 88-C-0600.
Supreme Court of Louisiana.
September 12, 1988.
Rehearing Granted December 1, 1988.
*451 Trevor G. Bryan, Jefferson, Bryan, Gray & Jupiter, New Orleans, for applicant.
Edward Rice, Jr., Lisa D. Newman, Adams & Reese, New Orleans, for respondent.
WATSON, Justice.
Does a medical consent form, which tracks the language of LSA-R.S. 40:1299.40 A.,[1] have to specify all known risks of a particular surgical procedure? Absent misrepresentation of material facts, what proof is required to rebut the statutory presumption of consent which arises when a patient signs the form?

FACTS
In 1975, plaintiff, Viola K. Hondroulis, had a bilateral L-5/S-1 discectomy. In May of 1981, she consulted defendant, Dr. John Schuhmacher, because of pain in her *452 lower back radiating into her right hip and leg. On June 24, 1981, Schuhmacher performed bi-lateral laminectomies at L-5/S-1 to relieve pressure on the nerves.[2] As a result of the surgery, Hondroulis lost sphincter and bladder control and became numb in her left leg. She also has the pain in her lower back, right hip and right leg which had existed before the second surgery. Although plaintiff signed a statutory consent form, she contends that she would not have undergone the surgery if she had known of these possible consequences.
According to patient Hondroulis' deposition, she was given no verbal advice about possible complications from the surgery.[3] Hondroulis consented to a lumbar laminectomy for removal of a ruptured disc and said, in deposition, that she knew death, paralysis and loss of other bodily functions can result from surgery. Defendants moved for summary judgment on the basis of the consent form, that excerpt from her deposition, and affidavits from three doctors that Dr. Schuhmacher's care was within the standard established for neurosurgeons.[4] In answering interrogatories, plaintiff's counsel said that a medical expert had not been retained.
The medical records of Hondroulis contain the reports of three post-operative consultants. One consultant, Dr. Richard W. Levy, concluded that Viola Hondroulis has a "partially compromised urinary sphincter, and bowel sphincter secondary to the June, 1981, surgery." Dr. Levy hesitated to recommend additional surgery for fear of aggravating her condition. According to the report of another consulting doctor, Gary Glynn, Hondroulis has probably developed bilateral, multilevel radiculopathy, or disease of the nerve roots: Dr. Glynn did not give an opinion on what should be done. A third doctor, J. Gregory Kinnett, also thought the numbness and incontinence resulted from bilateral multilevel radiculopathy rather than spinal stenosis. Dr. Kinnett said Hondroulis deserves the option of surgical intervention.
The trial court held that a doctor is not required to inform a patient of all conceivable risks inherent in a surgical procedure and that Hondroulis was bound by the consent form unless she signed it because material facts were misrepresented. Summary judgment was rendered on behalf of the defendant doctor.
A five judge court of appeal panel affirmed the trial court because of jurisprudence[5] holding that a written consent tracking the language of the statute constitutes valid informed consent. Three judges on the panel concurred on the ground that the statutory language does not preclude patient evidence that he or she was not advised of known risks associated with a surgical procedure.[6] A writ was granted to review the judgment of the court of appeal.[7]

LAW AND CONCLUSION
The Louisiana Uniform Consent Law requires disclosure of the nature and purpose *453 of a medical or surgical procedure, together with the known risks, if any, of death, brain damage, quadriplegia, paraplegia, the loss or loss of function of any organ or limb, or disfiguring scars.[8] Thus, a competent person contemplating treatment must be advised of the known serious complications which might result. This enables the patient to make an informed decision.
The Louisiana statute states that: "... consent shall be presumed to be valid and effective, in the absence of proof that execution of the consent was induced by misrepresentation of material facts." The statute provides an evidentiary presumption that a patient's written consent is valid. A statutory presumption, absent language establishing that it is conclusive, is rebuttable.[9] Hence, the presumption of valid consent can be rebutted by evidence that a patient was not told of "known risks" in the enumerated categories associated with his or her medical treatment.[10]
LaCaze v. Collier, 434 So.2d 1039 (La. 1983) considered an oral consent to treatment. LaCaze held that a doctor was not liable for failing to advise a patient about an easily corrected, remote, (one-half of a percent) complication (a vesico-vaginal fistula) which would not have been a determinative factor in the decision of an ordinary reasonable patient. Thus, LaCaze adopted an objective test for informed consent.[11]
LaCaze states that "[t]he written consent to medical treatment defined in Subsection A of R.S. 40:1299.40 does not purport to be exclusive."[12] In dicta, LaCaze says "[u]nder the statutory rule, the consequences are listed, and the physician's requirement is to disclose all known risks of the listed consequences occurring, whether or not the probability of the occurrence is remote."[13]
The most frequently cited case on informed consent is Canterbury v. Spence[14] which, coincidentally, involved urinary incontinence and bowel paralysis as a result of a laminectomy. In Canterbury, plaintiff and his mother testified that the treating defendant, Dr. Spence, did not reveal the risk of paralysis from a laminectomy, making out a prima facie case that the physician had violated his duty of disclosure. *454 The defendant doctor said that paralysis can be expected in one percent of laminectomies. Canterbury held that whether there was a duty to disclose that risk was a factual issue. In Canterbury there was no statutory presumption of adequate disclosure: therefore, the physician had the burden of rebutting the patient's evidence about a risk not disclosed.[15]
The scientific nature of the risk, i.e., the probability of harm, is the first step in the analysis of informed consent.[16] This initial burden of proof can be established by the testimony of the defendant-physician, as in Canterbury, supra.[17] A high probability of harm indicates a significant risk. However, the probability of harm must be weighed against the consequences of rejecting treatment.
Canterbury notes that there is no bright line separating a significant from an insignificant risk. Disclosure has been required when there was a three percent chance of death, paralysis or other injury,[18] and when there was a one percent chance of loss of hearing.[19] Nondisclosure has been justified when there was a 1.5% chance of loss of an eye[20] and a one in 100,000 chance of death.[21] In Hartke v. McKelway,[22] the physician was held liable for failing to disclose that there were one to three chances of pregnancy in a thousand laparoscopic cauterizations.
When the probability of harm is sufficient to have influenced the treatment decision of a reasonable person in the patient's condition, the risk is a material one.[23] Material risks must be disclosed unless there is an emergency situation,[24] or complete candor would have a detrimental effect on the patient: the latter is described as the therapeutic exception. A doctor should avoid frightening a patient away from a medically necessary course of treatment.[25] Neither exception is pertinent here.
Under the statute, a physician is required to advise a patient of any material consequences which would influence the decision of a reasonable person in the patient's condition. Although the statute seems to require that all known risks in the various categories be disclosed, this would be an impractical, unrealistic, and unwieldly interpretation. An amicus curiae brief on behalf of the Louisiana State Medical Society correctly contends that the statute could not reasonably require a listing of all the potential complications which might result from any medical procedure.[26] A fair reading of the statute indicates that its enumeration of risks is merely a listing of the possible results about which disclosure must be made.
The uniform consent form signed by Hondroulis created a presumption that she had been advised of the risks connected *455 with the proposed procedure and had given an informed consent. Plaintiff alleges that her incontinence and numbness were reasonably foreseeable material risks of which she should have been advised; and that she would have refused the surgery if she had known the risks and had been presented with safer alternatives.[27]
Despite the dicta in LaCaze, a reasonable limitation on the "known" risks which must be disclosed is implied in the statute. A rare or remote risk need not be disclosed.[28] Disclosure must be made only when a risk is medically known and of a magnitude that would be material in a reasonable patient's decision to undergo treatment.[29] Hondroulis knew that paralysis and loss of bodily functions could result from her surgery and was warned of those possible consequences on the consent form. It has not been shown that greater detail was required.[30]
Under LaCaze, the test is not subjective but objective: given the patient's condition, would a reasonable person have undergone the procedure if advised of the material complications? [31] The duty of disclosure only applies to reasonably foreseeable material risks.[32]LaCaze held that a .5% possibility of a correctable complication would not be a determining factor to a reasonable patient. When an undisclosed risk would have induced a reasonable person in the patient's condition to refuse treatment, there is a causal connection between the physician's failure to inform and the patient's injury.[33]
Plaintiff Hondroulis, in opposition to defendant's motion for summary judgment, could not rest on the allegations of her pleadings. Because of the presumption created by the uniform consent law, plaintiff was required to show that: (1) the adverse results of her surgery were known, significant, and material risks which should have been disclosed to her by Dr. Schuhmacher;[34] (2) those risks were not disclosed by Dr. Schuhmacher; (3) she was unaware of those risks; and (4) a reasonable person would have refused the surgery because of the risks.[35]
According to her deposition, Hondroulis was not told of any risks accompanying her lumbar laminectomies. It seems obvious that the ordinary reasonable patient would associate some risks with that operation.[36] However, Hondroulis did not introduce any evidence that her condition, unquestionably the result of her surgery, is a known and significant risk of which she was unaware and about which she should have been warned. On the contrary, she knew that paralysis and loss of bodily functions *456 were possible. It is the physician's superior knowledge of reasonably foreseeable adverse consequences which creates the duty to give a specific warning.[37] When a doctor knows or should have known about a material risk of which a reasonable patient would be unaware, there is a duty of disclosure.[38]
Here, in contrast to Canterbury, the uniform consent law establishes a presumption of informed consent. Plaintiff did not rebut that presumption by evidence that her condition is a material known risk of a laminectomy.[39] Because of the presumption created by the uniform consent law, plaintiff could not rest on the allegations of her petition and a statement that she was not informed of any risks.
To overcome the statutory presumption of informed consent, a plaintiff must first prove that a material risk existed. An adverse result does not establish a material risk. Absent proof of a material risk, the factual question of whether the magnitude of the risk would have convinced a reasonably prudent person in plaintiff's situation to decline treatment does not arise.[40] A remote, minor, or insignificant risk does not create a jury question. LaCaze, supra; Pauscher, supra.[41] When a material risk which would have influenced a reasonable person is proven, it must then be shown that the treating physician breached a duty to disclose that risk.[42]
While the trial court and the court of appeal[43] erred in holding that the presumption of the statute prevails in the absence of misrepresentation, their results were correct because plaintiff failed to go forward with her burden of proof at the hearing on the motion for summary judgment.[44]
For the foregoing reasons, the judgment of the court of appeal is affirmed.
AFFIRMED.
CALOGERO, J., dissents.
DENNIS, J., dissents with reasons.
LEMMON, J., dissents and will assign reasons.
NOTES
[1] LSA-R.S. 40:1299.40 provides:

"A Notwithstanding any other law to the contrary, written conset to medical treatment means a consent in writing to any medical or surgical procedure or course of procedurs which (a) sets forth in geeneral terms the naturee and purpose of the proceedur or procedures, togethr with the known risks, if any, of deeath, brain damagee, quadriplegia, paraplegia, the loss or loss of function of any organ or limb, if dusfugyrubg scars assicuated with such procedure or procedurees, (b) acknowledges that such disclosure of information has been mad and that all questions askeed about the procedur or procedures have been answerd in a satisfactory manner, and (c) is singned by the patieent for whom thee procedure is to be performed, or if the patient for any reason lacks legal capacity to consent by a person who has leegal authority to consent on behalf of such patieent in such circumstances. Such consnt shall be presumed to be valid and effective, in the absence of proof that execution of the consent was induced by misrepresentation of material facts.
"B. Except as provided in Subsection A of this Section, no evidence shall be admissible to modify or limit the authorization for performance of the procedure or procedures set forth in such written consent.
"C. Where consent to medical treatment from a patient, or from a person authorized by law to consent to medical treatment for such patient, is secured other than in accordance with Subsection A above, the explanation to the patient or to the person consenting for such patient shall include the matters set forth in Paragraph (a) of Subsection A above, and an opportunity shall be afforded for asking questions concerning the procedures to be performed which shall be answered in a satisfactory manner. Such consent shall be valid and effective and is subject to proof according to the rules of evidence in ordinary cases."
[2] The record does not disclose why bi-lateral laminectomies were performed for radial pain on the right side.
[3] "He came in late that evening and stated that this is the way he said it: It looks like a recurrent disc. I'm going to scheduleyou know, we're going to have to do surgery. We're going to schedule you tomorrow.'

"Q. Okay. Did you ask him what the result was from the myelogram?
"A. No. No. I was so shocked the way he said t that I didn't ask him that.
"Q. Was that the sum total of the conversation between you and Dr. Schuhmacher after the myelogram until the time of surgery?
"A. I didn't see Dr. Schuhmacher until then." Exhibit 3, Plaintiffs Opposition to Defendant's Motion for Summary Judgment.
[4] Because these affidavits were uncontradicted, there is no inference of negligence under the doctrine of res ipsa loquitur. Compare ZeBarth v. Swedish Hospital Medical Center, 81 Wash.2d 12, 499 P.2d 1 (1972).
[5] Madere v. Ochsner Foundation Hospital, 505 So.2d 146 (La.App. 4 Cir.1987) and Leiva v. Nance, 506 So.2d 131 (La.App. 4 Cir.1987), writ den. 512 So.2d 1176 (La.1987).
[6] Hondroulis v. Schuhmacher, 521 So.2d 534 (La.App. 4 Cir.1988).
[7] 522 So.2d 571 (La.1988).
[8] Since the operation was that named in the consent form, this is a negligence action, rather than the battery involved in Karl J. Pizzalotto, M.D., Ltd. v. Wilson, 437 So.2d 859 (La.1983). See the discussion in Cobbs v. Grant, 8 Cal.3d 229, 502 P.2d 1, 104 Cal.Rptr. 505 (1972), and Moser v. Stallings, 387 N.W.2d 599 (Iowa 1986).
[9] Osbom v. Johnston, 322 So.2d 112 (La.1975); Skipper v. Federal Insurance Company, 238 La. 779, 116 So.2d 520 (1959).
[10] The Supreme Court of Idaho, considering a similar informed consent statute, held that a plaintiff is not required to establish that consent was secured maliciously or by fraud, but is only required to overcome a statutory presumption that there was consent. See Rook v. Trout, 113 Idaho 652, 747 P.2d 61 (1987) where a summary judgment in favor of the defendant doctor was reversed. Giving conclusive weight to a consent form was also held to be erroneous in Gordon v. Neviaser, 478 A.2d 292 (D.C.App.1984).
[11] An objective standard is found in many other jurisdictions. See, for example, Hartke v. McKelway, 707 F.2d 1544 (D.C.Cir.1983), cert. den. 464 U.S. 983, 104 S.Ct. 425, 78 L.Ed.2d 360 (1983); Harbeson v. Parke Davis, Inc., 746 F.2d 517 (9 Cir.1984); Pauscher v. Iowa Methodist Medical Center, 408 N.W.2d 355 (Iowa 1987); Canterbury v. Spence, 464 F.2d 772 (D.C.Cir. 1972), cert. den. 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972); Crain v. Allison, 443 A.2d 558 (D.C.App.1982); and Sard v. Hardy, 281 Md. 432, 379 A.2d 1014 (1977). Another standard is subjective, based on what the particular injured patient would have decided if properly informed. See Petty v. United States, 740 F.2d 1428 (8 Cir.1984); Cobbs v. Grant, 8 Cal.3d 229, 502 P.2d 1, 104 Cal.Rptr. 505 (1972); Arena v. Gingrich, 305 Or. 1, 748 P.2d 547 (1988); Perin v. Hayne, 210 N.W.2d 609 (Iowa 1973) and Schultz, From Informed Consent to Patient Choice: A New Protected Interest, 95 Yale L.J. 219 (1985). Other courts have used a professional or physician-based standard, which only requires the disclosure customary in the medical community. See ZeBarth v. Swedish Hospital Medical Center, 81 Wash.2d 12, 499 P.2d 1 (1972); Carmichael v. Reitz. 17 Cal.App.3d 958, 95 Cal.Rptr. 381 (1971); Dunlap v. Marine, 242 Cal.App.2d 162, 51 Cal.Rptr. 158 (1966); Aiken v. Clary, 396 S.W.2d 668 (Mo. 1965); Roberts v. Young, 369 Mich. 133, 119 N.W.2d 627 (1963); Di Filippo v. Preston, 53 Del. 539, 173 A.2d 333 (1961).
[12] 434 So.2d 1039 at 1046.
[13] 434 So.2d 1039 at 1046.
[14] 464 F.2d 772 (D.C.Cir. 1972), cert. den. 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972).
[15] See Cobbs v. Grant, 8 CaUd 229, 502 P.2d 1, 104 Cal.Rptr. 505 (1972).
[16] See Smith v. Shannon, 100 Wash.2d 26, 666 P.2d 351 (1983); Pauscher v. Iowa Methodist Medical Center, 408 N.W.2d 355 (Iowa 1987); and Harbeson v. Parke Davis, Inc., 746 F.2d 517 (9 Cir.1984).
[17] See Abbey v. Jackson, 483 A.2d 330 (D.C.Cir. 1984).
[18] Bowers v. Talmage, 159 So.2d 888 (Fla.App. 1963).
[19] Scott v. Wilson, 396 S.W.2d 532 (Tex.Civ.App. 1965), aff'd, 412 S.W.2d 299 (Tex.1967).
[20] Yeates v. Harms, 193 Kan. 320, 393 P.2d 982 (1964).
[21] Pauscher, supra, 408 N.W.2d 355 (Iowa 1987).
[22] 707 F.2d 1544 (D.C.Cir. 1983), cert. den. 464 U.S. 983, 104 S.Ct. 425, 78 L.Ed.2d 360 (1983).
[23] See Harbeson v. Parke Davis, Inc., 746 F.2d 517 (9 Cir.1984); Cowman v. Homaday, 329 N.W.2d 422 (Iowa 1983); Petty v. United States, 740 F.2d 1428 (8 Cir.1984); Wilkinson v. Vesey, 110 R.I. 606, 295 A.2d 676 (1972); Pauscher, supra, 408 N.W.2d 355 (Iowa 1987).
[24] The emergency exception to informed consent discussed in Karl J. Pizzalotta, M.D., Ltd. v. Wilson, 437 So.2d 859 (La.1983) is not applicable.
[25] ZeBarth v. Swedish Hospital Medical Center, 81 Wash.2d 12, 499 P.2d 1 (1972).
[26] In brief, the Society lists 156 known risks associated with a laminectomy.
[27] With the benefit of hindsight, most patients suffering adverse results undoubtedly believe this to be true. See Cobbs v. Grant, 8 Cal.3d 229, 502 P.2d 1, 104 Cal.Rptr. 505 (1972).
[28] See Kissinger v. Lofgren, 836 F.2d 678 (1 Cir.1988); and Pauscher, supra, 408 N.W.2d 355 (Iowa 1987).
[29] See Kissinger, supra, note 28.
[30] See Mills v. United States, 764 F.2d 373 (5 Cir.1985), cert. den. 474 U.S. 1061, 106 S.Ct. 808, 88 L.Ed.2d 783 (1986). Compare Petty v. United States, 740 F.2d 1428 (8 Cir.1984).
[31] Because the test is objective, plaintiffs status as a registered nurse is irrelevant.
[32] See Cowman, supra, 329 N.W.2d 422 (Iowa 1983); and Wilkinson v. Vesey, 110 R.I. 606, 295 A.2d 676 (1972).
[33] See Adams v. El-Bash, 338 S.E.2d 381 (W.Va. 1985) and Cobbs v. Grant, 8 Cal.3d 229, 502 P.2d 1, 104 Cal.Rptr. 505 (1972).
[34] Expert testimony is usually necessary to prove the magnitude of the risk. See, for example, Gordon v. Neviaser, 478 A.2d 292 (D.CApp. 1984) and Kissinger v. Lofgren, 836 F.2d 678 (1 Cir.1988).
[35] The patient's burden of proof has been described as follows:

"(1) The existence of a material risk unknown to the patient;
"(2) A failure to disclose that risk on the part of the physician;
"(3) Disclosure of the risk would have led a reasonable patient in plaintiffs position to reject the medical procedure or choose a different course of treatment;
"(4) Injury." Pauscher, supra, 408 N.W.2d 355 at 360.
[36] Disclosure of facts generally known by reasonable persons is not required. See Kissinger, supra, 836 F.2d 678 (1 Cir.1988).
[37] See Petty v. United States, 740 F.2d 1428 (8 Cir.1984).
[38] Kissinger, supra, 836 F.2d 678 (1 Cir.1988).
[39] In the absence of such evidence, directed verdicts were granted in Pauscher, supra, 408 N.W.2d 355 (Iowa 1987) and Grosjean v. Spencer, 258 Iowa 685, 140 N.W.2d 139 (1966).
[40] See Smith v. Shannon, 100 Wash.2d 26, 666 P.2d 351 (1983); Precourt v. Frederick, 395 Mass. 689, 481 N.E.2d 1144 (1985).
[41] Compare Halley v. Birbiglia, 390 Mass. 540, 458 N.E.2d 710 (1983) where an expert's affidavit stated that thrombosis was a known risk of an anteriogram.
[42] See Hartke v. McKelway, 707 F.2d 1544 (D.C. Cir.1983), cert. den. 464 U.S. 983, 104 S.Ct. 425, 78 L.Ed.2d 360 (1983).
[43] While the opinion of the court of the court of appeeal found the presumption conclusive, the three concurring members of the court agreed that the presumption may be reebutted: the holding here..
[44] LSA-C.C.P. art. 967 provids in pertinent part that:

"* * * When a motion for summary judgment is madeee and supported as provided above, an adverse party may not rest on the but his respose, by affidvits or as otherwise provided above, must set froth specific facts showing that theere is a geenuine issue for trial If he does not so respond, summary judgmeent, if appropriate, shall be rndered against him."