ALFORD, Judge.
This is an appeal from a judgment in the trial court following a jury trial, dismissing the medical malpractice claims of the plaintiff, Jack Patrick Harris, Trustee for the Bankruptcy of Jeffrey Kenneth Cloud and Brenda A. Cloud (hereinafter referred to as Appellant), in favor of the defendants, Martin L. Bell, M.D., and Lanny Leggett.[1] Appellant assigns as error the following:
1) the jury’s finding that Dr. Martin L. Bell disclosed all material facts reasonably necessary to an informed consent;
2) the jury’s failure to award damages for lack of informed consent;
3) the jury’s finding that neither Dr. Martin L. Bell nor Nurse Leggett misrep *1139 resented insurance coverage of the surgical procedures;
4) the jury’s finding that Dr. Martin L. Bell did not breach the applicable standard of medical care; and,
5) the improper conduct of Dr. Bell’s counsel during closing argument.
The defendant/appellee filed an answer to the appeal seeking damages for the prosecution of a frivolous appeal.
In May of 1981, Brenda Cloud was hospitalized in Baton Rouge General Hospital under the care of Dr. Cacioppo for testing procedures to determine the cause of her recent symptoms of nausea, diarrhea, and stomach pain. While hospitalized, Mrs. Cloud became acquainted with Lanny Leg-gett, who was the nurse of Dr. Martin L. Bell. Nurse Leggett discussed with Mrs. Cloud the possibility of Dr. Bell performing surgery on her. Mrs. Cloud was subsequently diagnosed with irritable bowel syndrome and released from the hospital.
Mrs. Cloud first visited Dr. Bell, who practices plastic and reconstructive surgery, on August 26, 1981. On September 29, 1981, Dr. Bell performed reduction mammoplasty[2] and abdominoplasty with a plication of diastasis rectus abdominis.[3] The surgeries were performed at Baton Rouge General Hospital, and Mrs. Cloud was released on October 1, 1981. Mrs. Cloud had follow-up office visits with Dr. Bell on October 6, October 13, October 15, and October 20, 1981.
Mrs. Cloud instituted the instant litigation alleging that as a result of negligence in surgery and post-operative care by Dr. Bell, she suffers permanent anesthesia or loss of sensation over a major portion of her anterior torso, has disfiguring scars on her breasts and abdomen, and has suffered nipple loss from an untreated infection at the surgical site. Mrs. Cloud claims that had she known of the possibility of permanent anesthesia, she would not have elected to have the surgery. Additionally, Mrs. Cloud alleges that Dr. Bell and Nurse Leg-gett made representations upon which she relied that her medical insurance would provide coverage for the surgical procedures; such coverage was subsequently denied.
INFORMED CONSENT
The Uniform Consent Law requires that a competent person contemplating treatment be advised of the known serious complications which might result, to enable the patient to make an informed decision. Hondroulis v. Schuhmacher, 531 So.2d 450 (La.1988), reh’g granted, 533 So.2d 1221 (1988).[4] La.R.S. 40:1299.40 (in pertinent part) provides as follows:
A. Notwithstanding any other law to the contrary, written consent to medical treatment means a consent in writing to any medical or surgical procedure or course of procedures which (a) sets forth in general terms the nature and purpose of the procedure or procedures, together with the known risks, if any, of death, brain damage, quadriplegia, paraplegia, the loss or loss of function of any organ or limb, of disfiguring scars associated with such procedure or procedures, (b) acknowledges that such disclosure of information has been made and that all questions asked about the procedure or procedures have been answered in a satisfactory manner, and (c) is signed by the patient for whom the procedure is to be performed, or if the patient for any reason lacks legal capacity to consent by a person who has legal authority to consent on behalf of such patient in such circumstances. Such consent shall be presumed to be valid and effective, in the absence of proof that execution of the *1140 consent was induced by misrepresentation of material facts.
B. Except as provided in Subsection A of this Section, no evidence shall be admissible to modify or limit the authorization for performance of the procedure or procedures set forth in such written consent.
C. Where consent to medical treatment from a patient, or from a person authorized by law to consent to medical treatment, for such patient, is secured other than in accordance with Subsection A above, the explanation to the patient or to the person consenting for such patient shall include the matters set forth in Paragraph (a) of Subsection A above, and an opportunity shall be afforded for asking questions concerning the procedures to be performed which shall be answered in a satisfactory manner. Such consent shall be valid and effective and is subject to proof according to the rules of evidence in ordinary cases.
Material risks must be disclosed unless an emergency situation exists or in cases where complete candor would have a detrimental effect on the patient. 531 So. 2d at 454. A risk is considered material when the probability of harm is sufficient to have influenced the treatment decision of a reasonable person in the patient’s condition. Id. Disclosure must be made only when a risk is medically known and of a magnitude that would be material in a reasonable patient’s decision to undergo treatment; rare or remote risks need not be disclosed. 531 So.2d at 455.
Mrs. Cloud testified at trial that she continues to suffer numbness from just above her breasts to her hips, and that such a complication was not disclosed to her prior to trial. Dr. Bell testified that he informed Mrs. Cloud of the possibility of infection following surgery, of temporary numbness at the surgery site, of the possibility of nipple and/or areola loss, and other complications. Additionally, Mrs. Cloud was given brochures, which she admitted reading, detailing both of the surgical procedures and outlining possible complications; the possibility of permanent anterior torso anesthesia was not enumerated. Dr. Bell testified that permanent anterior torso anesthesia was not a known risk in 1981. Dr. Bell further testified that it is impossible to have numbness between the two surgery sites. Also, Dr. Bell opined that since Mrs. Cloud displayed nipple erectile response on examination by Dr. Snatic, she has sensation in the area. Dr. Roy Brabham, admitted as an expert in the field of plastic and reconstructive surgery, testified that the pattern of numbness described by Mrs. Cloud is inconceivable in the area untouched by surgery, i.e., from the bottom of the breasts to the margin of the ribs. Dr. Howard Kisner, admitted as an expert in the field of plastic and reconstructive surgery, testified that approximately 1 — 2% of patients who undergo mammo-plasty have permanent anesthesia usually on the sides of the breasts, but not from the collarbone to the hips. Dr. Gustavo Colon, admitted as an expert in the field of plastic and reconstructive surgery, testified that anesthesia is a recognized occurrence but that it usually abates with sensation returning. Dr. Colon opined that Mrs. Cloud did in fact suffer anesthesia as she described; however, Dr. Colon relied on the representation by the patient that she had no nipple erectile response. In the written report of Dr. Steven Snatic, a neurologist, admitted into evidence, Dr. Snatic reports that following examination of Mrs. Cloud, he found superficial abdominal reflexes present in both upper abdominal quadrants and questionably in the lower abdominal quadrants, erection of nipples on cutaneous stimulation, but that Mrs. Cloud reported no sensation to touch or pin prick over the upper chest. Dr. Snatic opined that Mrs. Cloud must have some feeling of the nipples and is unlikely to be completely without sensation in the upper abdominal areas.
Based on the expert testimony presented at trial, the jury could have found either that permanent anesthesia was not a known risk as claimed by Dr. Bell or that the risk of permanent anesthesia was so remote that disclosure was unnecessary, or that Mrs. Cloud did not suffer permanent anesthesia to the extent claimed. We are unable to say that either *1141 finding is manifestly erroneous. See Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
STANDARD OP CARE
Mrs. Cloud alleges that Dr. Bell’s substandard treatment in her surgery and subsequent post-operative care resulted in undesirable results. La.R.S. 9:2794(A) dictates the burden of proof for a plaintiff in a medical malpractice action as follows:
A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., a dentist licensed under R.S. 37:751 et seq., or a chiropractic physician licensed under R.S. 37:2801 et seq., the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, or chiropractic physicians within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that-skill, and
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
The opinions of expert witnesses who are members of the medical profession and who are qualified to testify on the subject are necessary to determine whether or not physicians possess the requisite degree of knowledge or skill, or failed to exercise reasonable care and diligence. Steinbach v. Barfield, 428 So.2d 915 (La.App. 1st Cir.), writ denied, 435 So.2d 431 (La.1983). The testimony of Dr. Brabham, Dr. Colon, and Dr. Kisner was presented to the jury on the issue of negligence. Additionally, the written report of Dr. Heber Ethridge, also a plastic surgeon, was introduced into evidence. All of these authorities agreed that the undesirable results experienced by Mrs. Cloud (anesthesia, pronounced scarring, and tissue loss) were acceptable post-operative findings not occasioned by the quality of treatment she received from Dr. Bell. Dr. Bell, Dr. Kisher, Dr. Colon and Dr. Ethridge, all expressed the opinion that the excessive scarring complained of by Mrs. Cloud could be corrected with a scar revision procedure. The medical opinions varied as to the extent of anesthesia suffered by Mrs. Cloud and as to whether she suffered any nipple loss. Thus, we are unable to say the trial court committed error in finding a lack of negligence on the part of Dr. Bell.
MISREPRESENTATION OF INSURANCE COVERAGE
Appellant alleges that Nurse Leggett and Dr. Bell led Mr. and Mrs. Cloud to believe their medical insurance would cover the surgical procedures, and that had they known otherwise, the operations would not have been undertaken. In order to recover for negligent misrepresentation, the plaintiff must establish (1) a legal duty on the part of the defendant to supply correct information to the plaintiff, (2) a breach of this duty, and (3) damages to plaintiff as a result of his justifiable reliance on the misrepresentations. Busby v. Parish National Bank, 464 So.2d 374 (La.App. 1st Cir.), writ denied, 467 So.2d 1132 (La.1985).
We are unable to find legal authority and none has been cited to us, that would impose upon a health care provider the duty to ascertain the provisions of a patient’s medical insurance policy and advise the patient regarding coverage of any proposed treatment. Additionally, Mr. and Mrs. Cloud were not prevented from contacting their insurer regarding the extent of their medical coverage. Consequently, *1142 the trial court was correct in denying recovery on this basis.
CONDUCT OF COUNSEL
Appellant argues that during defendant’s closing argument, counsel for Dr. Bell made certain physical gestures, unbeknownst to the court and opposing counsel, which so prejudiced the outcome of the trial that the judgment should be reversed. Appellant claims that counsel for Dr. Bell reached into his coat pocket and pulled out a syringe, approximately four inches in length with a one-inch needle, which he inserted into the palm of his left hand while standing directly in front of the jury. Appellant argues that the actions were unrelated to the evidence presented at trial and that counsel’s intentional concealment of his actions prevented a contemporaneous objection.
The trial judge denied Appellant’s motion for new trial wherein the prejudicial conduct of counsel was cited as grounds for a new trial, giving the following reasons:
[T]he bottom line on the motion for new trial I have to determine is whether or not in my mind it in any way affected the jury’s verdict. And it did not in my mind. If anything, it is my opinion the jury held it against Mr. Boland and, therefore, his client....
The trial court is in a better position than an appellate court to determine possible prejudicial effects resulting from counsel’s argument before a jury. Temple v. Liberty Mutual Ins. Co., 330 So.2d 891 (La.1976). Thus, we find no error in the trial court finding that counsel’s actions were not so prejudicial as to warrant the granting of a new trial.
FRIVOLOUS APPEAL
Appellee, Martin L. Bell, M.D., answered the appeal alleging entitlement to damages on the grounds that the appeal taken was frivolous. Article 2164 of the Louisiana Code of Civil Procedure gives an appellate court authority to award damages for frivolous appeal. However, damages are awarded only when there are no serious legal questions or when it is obvious that the appeal was taken solely for delay or that counsel is not sincere in the view of the law he advocated even though the court is of the opinion that such view is not meritorious. Rogers v. D’Aubin, 498 So.2d 253 (La.App. 1st Cir.1986). Though we find the arguments of the instant appeal to be without merit, Appellant did raise several legitimate issues; therefore, damages for frivolous appeal should not be awarded.
For the reasons assigned herein, the judgment of the trial court is affirmed, with all costs of this appeal to be borne by Appellant.
AFFIRMED.

. The testimony at trial indicated that the defendant designated in the petition as "Lanny Leg-gett” is actually named “Landa Liggett” though she goes by the name of “Lanny or "Lannie".

. Reduction mammoplasty is more commonly known as breast reduction surgery.

. An abdominoplasty with a plication of diasta-sis rectus abdominus includes what is commonly known as a "tummy tuck”, and includes a tightening of the rectus abdominus muscle.

. The petition for rehearing filed in the Hon-droulis case reveals that rehearing was granted by the Supreme Court to consider whether the case should be remanded to the trial court to allow the plaintiff-applicant, Viola K. Hondroul-is, an opportunity to present additional evidence to rebut the presumption of informed consent; reconsideration of the Court's interpretation of La.R.S. 40:1299.40 was not requested.